KENNETH C. MOCK *v.* STATE OF MARYLAND

[No. 69, September Term, 1967.]

*Decided January 29, 1968.*

The cause was argued before MURPHY, C. J., and MORTON, ·ORTH, and THOMPSON, JJ.

*William J. Rowan, III,* for appellant.

*Dickee M. Howard, Assistant Attorney General,* with whom ·were *Francis B. Burch, Attorney General, Leonard T. Kardy, .State's Attorney for Montgomery County,* and *Ronald F. McDonald, Jr., Assistant State's Attorney for Montgomery ·County,* on the brief, for appellee.

PER CURIAM.

The appellant, Kenneth C. Mock, was convicted of murder ·in the second degree by a jury in the Circuit Court for Mont-

gomery County and sentenced to eighteen years in the Maryland Penitentiary. His only contention on this appeal is that the trial judge erred in failing to instruct the jury, as requested, that if it found that the defendant did not harbor malice by reason of being under the influence of alcohol, or if the jury had a reasonable doubt whether he harbored malice, it could not find him guilty of a higher offense than manslaughter.

The evidence adduced at the trial established that the appellant was a roomer in the home of the seventy-five year old decedent, Elzey Allnut. On Sunday, April 3, 1966, the appellant, returning from a weekend trip to his parents' home in Pennsylvania, during which trip he consumed two vodka collins, arrived at the decedent's home between 7:30 and 8:00 p.m. Upon his return, he immediately drove to a delicatessen and had three mugs of beer. At about 9:50 p.m., he went to a restaurant where he drank five draft beers, leaving there at approximately midnight, after which he met his fiancee, Dolores Beauch, in a parking lot in which his car was parked.

Miss Beauch testified that the appellant's speech was then slurred, that he was not walking well, and that in her opinion he was drunk. After about forty-five minutes, the appellant got into his car and drove on the wrong side of the road with a flat tire. Miss Beauch followed him since she believed he was drunk, and she wanted to see that he got home safely. At one point, she got out of her car at a traffic light to tell the appellant to drive carefully. She testified that at that time "he seemed to be in a daze and he mumbled something."

The appellant returned to the decedent's home about 1:00 a.m., at which time an argument ensued between the appellant and the decedent concerning the appellant's weekend trip. Appellant testified that the decedent referred to his family and fiancee in insulting terms, that she slapped him on the back, and he, in return, slapped her once on the cheek and once in the mouth. After the first slap, the decedent fell against the wall to the floor and after the second she sat on the bed with her head on the pillow, crying and holding her face. The decedent ordered the appellant out of her house at approximately 2:00 a.m. Before leaving appellant called Suburban Hospital to inquire about care for the decedent since he knew she was

in "bad shape." The appellant then drove to Pennsylvania. Appellant stated that during this period he was "feeling the beer" and was "high" but that he wasn't drunk.

Two roomers residing in Mrs. Allnut's home testified that they heard some conversation between the decedent and appellant coming from the decedent's bedroom, but that nothing led them to believe that anything unusual had taken place. No screams or yells were heard by them.

The decedent was discovered in her room the next day. She was bruised and badly beaten, and as a result of physical violence to her head, she died on April 19, 1966.

As heretofore indicated, the appellant requested and the court refused to give, the following instruction to the jury:

"* * *that there has been some evidence that the defendant was under the influence of alcohol, that as the Court has said, the distinction between murder and manslaughter is the presence or absence of malice. Therefore, if the jury finds the defendant did not harbor malice by reason of being under the influence of alcohol, or they have a reasonable doubt whether he harbored malice, they cannot find him guilty of a higher offense than manslaughter."

It is, of course, incumbent upon the court, when requested in a criminal case, to give an advisory instruction on every essential question or point of law supported by the evidence. *Bruce v. State,* 218 Md. 87; *Huber v. State,* 2 Md. App. 245; *Tipton v. State,* 1 Md. App. 556. While voluntary drunkenness is generally not a defense to crime in this State, where a particular motive, intent or purpose, is an essential element of a crime, drunkenness may be considered in determining whether the accused lacked the mental capacity to form the requisite motive, intent, or purpose; and if a sufficient mental incapacity is found to exist, drunkenness may constitute a defense to the particular offense charged. *Michael v. State,* 1 Md. App. 243. The Court of Appeals, however, in *Chisley v. State,* 202 Md. 87, flatly held at page 106 that "voluntary intoxication will not reduce murder to manslaughter, nor will it excuse the crime." Appellant urges, in effect, that *Chisley* was wrongly

decided on this point of law, and that the better reasoned cases from other jurisdictions recognize that an accused who, by reason of intoxication, cannot possess the state of mind necessary to harbor malice, which distinguishes murder from manslaughter, cannot be held criminally responsible for murder. We see no need to re-examine *Chisley* on the facts of this case, for assuming that there was evidence of sufficient provocation to support a felonious homicide less than murder in the second degree, we think that there was insufficient evidence of drunkenness to support the jury charge requested by appellant. The relevant test is not, as contained in the proposed instruction, whether the accused was "under the influence of alcohol," but rather whether "he was so intoxicated as to be incapable of entertaining the specific mental intent or of possessing the mental state which is an essential element of the crime for which he is being prosecuted," *viz.*, that he was so intoxicated that he was robbed of his mental faculties to a degree that he was incapable of forming the requisite intent when the act was committed. See *Dubs v. State,* 2 Md. App. 524; *Michael v. State, supra.*

The evidence shows that over approximately a ten-hour period the appellant consumed two vodka drinks and eight draft beers. While appellant's fiancee testified that to her he appeared to be drunk, appellant's own testimony was that he was "feeling the beer," that he was "high," but that he was not drunk. We think such evidence, viewed in the light of appellant's actions after striking the decedent, as heretofore set forth, does not constitute evidence of drunkenness sufficient to support the requested charge. In so concluding, we do not depart from the holding in *Chisley* that voluntary intoxication will not reduce murder to manslaughter. We note, however, that the point is by no means free of difficulty. See 26 Am. Jur. *Homicide* §§ 118-119; 40 C.J.S. *Homicide* § 5; Hochheimer (2d Ed.) § 14; *Clark and Marshall on Crimes* (6th Ed.) § 609; *Perkins on Criminal Law* Ch. 8, § 3, pp. 791-795; *Warren on Homicide* Vol. 1, § 61; Annot. 8 A.L.R. 1052. See also the very excellent discussion in *People v. Gorshen,* 336 P. 2d 492 (Calif.).

*Judgment affirmed.*