## MARIE ANNA ROLFES *v.* STATE OF MARYLAND

[No. 559, September Term, 1969.]

*Decided August 21, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Dennis C. McCoy* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Peter D. Karceski, Jr., Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Having been convicted of manslaughter in a non-jury trial in the Criminal Court of Baltimore and given a five year suspended sentence, appellant first contends in this

appeal that the evidence was legally insufficient to sustain her conviction.

The record indicates that appellant, who had been separated from her husband, returned home sometime after nine o'clock in the evening after having consumed "a dozen mixed drinks" over a period of several hours at a neighborhood tavern and took some "Librium" for her nerves. Not having had dinner, she sent her young son to a local carry-out restaurant for food and while he was gone she procured a butcher knife and a fork, sat down in a chair and awaited his return. Shortly thereafter the son entered the front door with the food, followed by his stepfather who was appellant's estranged husband. The son testified that his mother, upon seeing the husband, told the husband to "Get out of here." The husband at first retreated toward the door but as the appellant got up from the chair, he came toward her. According to the son, the appellant shook the knife at her husband and said: "Get out of here." When the husband continued toward the appellant "she swung around and hit him" with the knife, cutting his hand. Thereupon, according to the son: "My stepfather rushed forward and knocked her down on her knees. She was back, they were wrestling for about two minutes, and well, my father grabbed her hand, and he was pulling her up and the knife went in him." The husband then staggered out the door, went to a house across the street from which he was taken to a hospital where he was pronounced dead "due to a stab wound of the chest which penetrated the pulmonary artery."

The appellant testified that she remembers her husband, Gerry, came into the house and "[t]he only thing I remember after that is Gerry coming after me, and I put my hand out. That's all I do remember. I think I remember him saying to me something like, 'You stabbed me,' or 'You hit me.' I said, 'I didn't.' That was it, and I didn't think I had, because I didn't even realize that I had a knife in my hand."

Manslaughter is a common law felony and is defined as

the "unlawful and felonious killing of another, without malice aforethought, either expressed or implied, and is either voluntary or involuntary homicide, depending upon the fact whether there was an intention to kill or not." *Neusbaum v. State*, 156 Md. 149, 155. Inasmuch as the trial judge found that "the homicide was not deliberate or intentionally done", the crime here involved is involuntary manslaughter.

As stated by this Court in *State v. Gibson*, 4 Md. App. 236 at 242:

> "Involuntary manslaughter at common law has been generally defined as the killing of another unintentionally and without malice (1) in doing some unlawful act not amounting to a felony, [footnote omitted] or (2) in negligently doing some act lawful in itself, or (3) by the negligent omission to perform a legal duty. See 1 *Warren on Homicide* (Perm. Ed. 1938), 420, 421; 26 Am. Jur. *Homicide*, Sec. 18, 44; 40 C.J.S. *Homicide*, Sec. 55, and cases therein cited. To this basic definition other authorities add the qualification, as to the first class of involuntary manslaughter, that the unlawful act be *malum in se*, and not merely *malum prohibitum*, and as to the second and third classes of the offense, that the negligence be criminally culpable, *i.e.*, that it be gross. Clark and Marshall, *Crimes* (Sixth Ed.), Sections 10.04, 10.12-10.14; *Perkins on Criminal Law*, pp. 34, 57-61; Wharton's *Criminal Law and Procedure*, (Anderson Ed.), Vol. 1, Sections 289-292, 296, and cases therein cited."

Moreover, in Maryland when "a prosecution for involuntary manslaughter is based on the commission of an unlawful act causing death, the act must itself be dangerous to life." *State v. Gibson, supra*, at 243.

The trial judge, prior to rendering the guilty verdict, stated his findings and concluded that as the victim ap-

proached the appellant, she "swung at him" with a "6-inch blade kitchen knife"; that the appellant was the aggressor in the incident; that the deceased when he knocked appellant to her knees, "was attempting to take the knife from her"; and that in the process of trying to lift appellant off the floor while holding her by both wrists, they both fell or stumbled and the "deceased was stabbed in the chest and died thereof from the wound." The judge further found that inasmuch as appellant had precipitated the incident and inasmuch as there was nothing in the record to indicate that she was, or reasonably believed herself to be, in imminent danger of death or serious bodily harm, the homicide was neither justifiable nor excusable.

On the record before us, we cannot say that the factual findings and the judgment of the trial judge were clearly erroneous. Md. Rule 1086. Appellant's assault upon her husband with the knife was an unlawful act dangerous to life. Accordingly, she is criminally liable for any injury caused thereby, even though the injury was not foreseen and was inflicted unintentionally. *Insurance Company v. Prostic,* 169 Md. 535; see also *Worthington v. State,* 92 Md. 222.

Nor do we find any merit in the contention that the trial judge erred in "allowing the medical examiner to testify to non-medical conclusions." The record discloses that after appellant "stipulated to the doctor's qualifications", the medical examiner testified that he performed an autopsy on the body of appellant's husband and found that he had a "stab wound of the left side of the chest" and an "incised stab wound of the right hand." The following colloquy then occurred concerning the stab wound on the hand of the deceased:

"Q. Doctor, do you have an opinion as to how a wound like that would occur?
MR. GARRITY: Objection, Your Honor. It seems like without giving any hypothetical question, I think it could have happened in any number of ways.

THE COURT: I don't know. He's the expert. I'm going to overrule it.

THE WITNESS: Well, a wound like that could have been received by grabbing a knife, trying to. This is the sort of wound I call a defense wound.

\* \* \* \*

Q. Why is that, Doctor?

A. Well, it's an automatic attempt of an individual to protect himself.

MR. GARRITY: Objection.

THE COURT: Yes. How do you know that?

THE WITNESS: Well, I mean you don't, but I mean, I mean this is only a surmise. These wounds are seen in stab type cases. You see a wound on the palm of the hand, also on the wrist, and we assume that this is an attempt to ward off the knife or whatever instrument is being used.

THE COURT: Could it have been caused in any other way?

THE WITNESS: Oh, yes. I don't mean to imply that is the only thing that could have happened."

As stated by the Court of Appeals in *Nizer v. Phelps,* 252 Md. 185, at 193: "The Maryland rule is not whether the jury could possibly decide the issue without expert help, but whether the expert testimony would be of appreciable help to the jury in resolving the issue. Here again, the determination of whether or not the expert testimony will be of appreciable help to the jury is within the sound discretion of the trial judge." Here, contrary to appellant's contention, the witness was not "usurping the province of the trier of fact and, in effect, deciding that the appellant had aggressed or attacked the deceased or intended to do harm to him." The witness did not purport to base his opinion on the facts of this particular case but, instead, was merely stating from his ex-

perience one possible way a wound of this type could be inflicted. Under the circumstances here, such an opinion could not, by itself, support a finding of fact that appellant was the aggressor. However, the opinion could be of appreciable help to the trier of fact in determining whether an inference, based on other credible evidence, that appellant was the aggressor was a rational inference. The admission of expert testimony is within the sound discretion of the trial judge and we find no abuse of that discretion here. *Harding v. State,* 5 Md. App. 230, 236.

*Judgment affirmed.*