[Crim. No. 13582. Third Dist. Aug. 28, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN EDWARDS VAN RONK, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976(b) and 976.1, parts II through VI are not certified for publication.

**COUNSEL**

Mariko M. Gushi, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, James T. McNally and Ruth M. Saavedra, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SPARKS, J.**—In this appeal we consider whether attempted voluntary manslaughter is such a logical and legal absurdity that it cannot exist as a crime. We conclude that it is not an absurdity and consequently reaffirm that it constitutes a crime in California.

Defendant Joseph Edward Van Ronk was convicted by a jury of attempted voluntary manslaughter (Pen. Code, §§ 192, subd. 1/664), a lesser included offense within the charge of attempted murder (Pen. Code, §§ 187/664). The jury further found that defendant personally used a firearm in the commission of the offense (Pen. Code, § 12022.5), and that he intentionally inflicted great bodily injury upon the victim (Pen. Code, § 12022.7). Defendant was sentenced to a total unstayed prison term of six years. In the

published portion of this opinion we review and refute defendant's contention that attempted voluntary manslaughter is a contradiction in terms and cannot logically constitute a crime. In the unpublished portion we consider and reject defendant's remaining contentions.

## FACTS

On the night of November 3, 1983, James Gravelle stayed overnight with his sister, Ruth. Defendant telephoned him there and asked whether he could obtain "a pound of pot" for him. Although James agreed to try to locate a pound of pot, he claimed that he would not profit in the deal and that he was only doing it as a friend. On the next morning, defendant went to Ruth's apartment and asked James if he had obtained the pound of pot. James said "nothing was up," meaning that he could not get it then. Defendant said he would return at noon.

Shortly after noon defendant returned to the apartment, this time accompanied by a young woman named Cindy. Defendant and Cindy remained about two hours during which time James attempted to locate some marijuana. At some point James and Cindy went to the store and while they were gone defendant told Ruth he thought he was being cheated. When James and Cindy returned defendant said he wanted to leave but Cindy refused to go with him. Defendant told her that she was his responsibility and that he would not leave her. She replied that he was not her "daddy," and refused to leave. James interjected: "The lady don't want to go. She don't want to go." At that point defendant asked James to go for a ride. He also suggested that he was getting cheated. James declined to depart with defendant, explaining that he refuses to get in a car with someone who is angry with him.

Defendant then asked James to step outside, acting as though he wanted to fight. James agreed, and added, "I'll break every bone in your body." As James stood and began walking to the door, defendant pulled out a pistol and said, "I should kill you." James raised his hands and said, "Get off." Defendant responded by shooting. James was hit three times. Defendant then shot at Cindy but missed, and also fired an errant shot at Ruth as she jumped into the kitchen. Defendant then commanded: "Ruth, come out here. I'm going to shoot you." She begged him not to shoot her, and he agreed if she would give him time to leave. Defendant then argued with Cindy over "the money" and left after she told him where it was.

After defendant left Ruth looked outside and saw her friend, Debbie Jones, drive up. Ruth and Debbie helped James to Debbie's car, and Debbie drove him to the hospital. The treating physician testified that James'

wounds were critical and would have been fatal in the absence of immediate treatment. Meanwhile, Ruth returned to her apartment. Cindy wanted to use the telephone but was afraid to stay at the apartment, so Ruth took her to the Shortstop Market. There by chance they encountered defendant, who ran into some apartments. Ruth then gave Cindy a ride to where she wanted to go, and she has not seen her since.

The defendant did not testify and presented no evidence. Instead the defense constructed a theory of self-defense from the prosecution's case in chief. Essentially the defense argued that it was obvious that the incident arose over a drug deal, and that it was likely that James and Ruth were cheating defendant in the deal. Defendant also argued that James probably had a weapon, and that defendant shot in self-defense. Although James and Ruth denied that James had a weapon, defendant pointed out that Ruth did not immediately call the police and did not accompany James to the hospital. She also told a false story to the police in the initial stages of investigation. From this diaphanous evidence defense counsel argued that she probably stayed to dispose of unfavorable evidence before the police arrived.

## DISCUSSION

### I

█ Defendant contends that the crime of attempted voluntary manslaughter is a logical and legal absurdity. This issue has been resolved contrary to defendant in prior appellate court decisions. (*People* v. *Williams* (1980) 102 Cal.App.3d 1018, 1025 [162 Cal.Rptr. 748]. See also *People* v. *Tucciarone* (1982) 137 Cal.App.3d 701, 705 [187 Cal.Rptr. 159]; *People* v. *Ibarra* (1982) 134 Cal.App.3d 413 [184 Cal.Rptr. 639]; *People* v. *Kozel* (1982) 133 Cal.App.3d 507, 525 [184 Cal.Rptr. 208]; *People* v. *Heffington* (1973) 32 Cal.App.3d 1, 11-12 [107 Cal.Rptr. 859].) We reject defendant's argument under the authority of those decisions and for the additional reason that our independent consideration compels the conclusion that defendant's argument is unsound.

Murder is an unlawful homicide with malice aforethought. (Pen. Code, § 187, subd. (a).) In the absence of other statutory circumstances, first degree murder is distinguished from second degree murder by the presence or absence of premeditation and deliberation. (Pen. Code, § 189.)[1] █ Pre-

---

[1]Those other circumstances are listed in Penal Code section 189. That section provides in relevant part: "All murder which is perpetrated by means of a destructive device or explosive, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premediated killing, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary, mayhem, or any act punishable under Section 288, is murder of the first degree. . . ."

All further statutory references are to the Penal Code.

meditation and deliberation are not to be confused with a deliberate intent to kill. Premeditation and deliberation require "substantially more reflection; i.e., more understanding and comprehension of the character of the act than the mere amount of thought necessary to form the intention to kill." (*People* v. *Wolff* (1964) 61 Cal.2d 795, 822 [40 Cal.Rptr. 271, 394 P.2d 959].) It is therefore "obvious that the mere intent to kill is not the equivalent of a deliberate and premeditated intent to kill." (*People* v. *Bender* (1945) 27 Cal.2d 164, 181 [163 P.2d 8].) Consequently, an intentional killing is not first degree murder unless the intent to kill was formed upon a preexisting reflection and was the subject of actual deliberation and forethought. (*People* v. *Rowland* (1982) 134 Cal.App.3d 1, 7-9 [184 Cal.Rptr. 346].)[2]

■ In the same way that premeditation and deliberation will elevate an intentional killing to first degree murder, mitigating factors may reduce an intentional killing to manslaughter. Thus "[h]omicide itself is not a crime, but a class of crimes, graduated according to the mental state and personal turpitude of the offender." (*People* v. *Horn* (1974) 12 Cal.3d 290, 295 [115 Cal.Rptr. 516, 524 P.2d 1300].) As explained in *People* v. *Elmore* (1914) 167 Cal. 205, at page 210 [138 P. 989], the law acts out of forebearance for the weakness of human nature and, where sufficient facts are shown, will disregard the actual deliberate and malicious intent and reduce the crime to manslaughter. "[A]ccording to common law tradition, the malice is presumed to be wanting in such a situation [involving a killing in the heat of passion upon adequate provocation], the act 'being rather imputed to the infirmity of human nature.'" (Pike, *What is Second Degree Murder in California?* (1936) 9 So. Cal. L. Rev. 112, 113, quoting 1 Mitchie, Homicide (1914), p. 130, § 21.) In addition to an intentional killing upon a sudden quarrel or heat of passion induced by adequate provocation, an honest but unreasonable belief that it is necessary to act in self-defense will also serve to mitigate an intentional killing to manslaughter. (*People* v. *Flannel* (1979) 25 Cal.3d 668, 674-680 [160 Cal.Rptr. 84, 603 P.2d 1].) Yet a specific intent to kill remains implicit in the statutory definition of voluntary manslaughter. ■ ■■■ (*People* v. *Gorshen* (1959) 51 Cal.2d 716, 732 [336 P.2d 492]; *People* v. *Bridgehouse* (1956) 47 Cal.2d 406, 413 [303 P.2d 1018]; *People* v. *Welborn* (1966) 242 Cal.App.2d 668, 673 [51 Cal.Rptr. 644].)[3]

---

[2]Nonetheless, "[t]o prove the killing was 'deliberate and premeditated,' it shall not be necessary to prove the defendant maturely and meaningfully reflected upon the gravity of his or her act." (§ 189.)

[3]Voluntary manslaughter is statutorily defined as "the unlawful killing of a human being without malice . . . [¶] . . . upon a sudden quarrel or heat of passion." (§ 192, subd. (a).) Although this statute does not contain an express provision relating to provocation, that requirement is implicit in the definition of the crime. "Such provision was probably omitted

■ An attempt to commit a crime requires an intention to commit the crime and an overt act towards its completion. (*People* v. *Miller* (1935) 2 Cal.2d 527, 530 [42 P.2d 308]; *People* v. *Goldstein* (1956) 146 Cal.App.2d 268, 275 [303 P.2d 892]. See also § 664.) ■ Where a person intends to kill another person and makes an unsuccessful attempt to do so, his intention may be accompanied by any of the aggravating or mitigating circumstances which can accompany the completed crimes. In other words, the intent to kill may have been formed after premeditation or deliberation, it may have been formed upon a sudden explosion of violence, or it may have been brought about by a heat of passion or an unreasonable but good faith belief in the necessity of self-defense. If the law acts out of forbearance for the weakness of human nature and mitigates an intentional killing where mitigating circumstances appear, then we can discern no plausible reason why the law should not also mitigate an intentional attempt to kill under similar circumstances.

Defendant argues that the crime of attempted voluntary manslaughter is impossible because it would require the perpetrator to kill in a planned heat of passion or under a planned honest but unreasonable belief in the necessity of self-defense. This argument confuses planning with intent. The requisite intent for first degree murder on a premeditation and deliberation theory and the intent necessary for voluntary manslaughter are identical: both crimes require the specific intent to kill. (See *People* v. *Gorshen, supra,* 51 Cal.2d at pp. 732-733.)[4] Although the law distinguishes between completed intentional homicides on the basis of the manner in which the intent to kill was formed, the intent remains the same.

It is true that a person cannot plot in advance to kill in the heat of passion. Such a calculated plan is logically inconsistent with a spontaneous act committed in a moment of passion. But an assailant can form an intent to kill even under a paroxysm of passion. And this is true regardless of whether he is successful or unsuccessful in carrying out his intent. There is nothing illogical or absurd in a finding that a person who unsuccessfully attempted to kill another did so with the intent to kill which was formed in a heat of

---

from the code upon the ground that it was entirely unnecessary and surplusage, being simply a reiteration of a principle of law settled and established by all text-writers upon the subject." (*People* v. *Bruggy* (1892) 93 Cal. 476, 481 [29 P. 26]. See also *People* v. *Valentine* (1946) 28 Cal.2d 121 [169 P.2d 1]; *People* v. *Spurlin* (1984) 156 Cal.App.3d 119 [202 Cal.Rptr. 663].) Hence to reduce an intentional killing to voluntary manslaughter, both "provocation *and* heat of passion must be affirmatively demonstrated." (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 719 [112 Cal.Rptr. 1, 518 P.2d 913], italics in original, citations omitted.)

[4] A specific intent to kill might also be present in second degree murder, although it is not an essential element of that crime. (*People* v. *Gorshen, supra,* 51 Cal.2d at pp. 732-733; see *People* v. *Rowland, supra,* 134 Cal.App.3d at p. 9.)

passion or which arose out of an honest but unreasonable belief in the necessity of self-defense. Under those circumstances, the less culpable person is guilty of attempted voluntary manslaughter rather than attempted murder.

II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed.

Puglia, P. J., and Carr, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 14, 1985.

*See footnote, *ante*, page 818.