518 A.2d 132

**Jehu COX**

v.

**STATE of Maryland.**

**No. 267, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Dec. 5, 1986.

Certiorari Granted March 24, 1987.

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Valerie V. Cloutier, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Gary Honick, Asst. State's Atty. for Baltimore City, on brief), Baltimore, for appellee.

Submitted before GARRITY, BLOOM and KARWACKI, JJ.

BLOOM, Judge.

A jury in the Circuit Court for Baltimore City, presided over by Judge Kenneth Johnson, acquitted appellant, Jehu Cox, of attempted murder in the first degree and attempted murder in the second degree, but convicted him of attempted "voluntary" manslaughter, assault, wearing and carrying a handgun, and use of a handgun in the commission of a crime of violence. The trial judge sentenced appellant to a ten year prison term for attempted "voluntary" manslaughter and to a consecutive twenty year term for use of a handgun in the commission of a crime of violence.[1]

Appellant argues that he was improperly convicted of attempted "voluntary" manslaughter because there is no such crime under the common law of Maryland. He further contends that because the attempted voluntary manslaughter conviction was the predicate crime of violence for the

---

1. The court ruled for sentencing purposes that the attempted manslaughter conviction merged with the assault conviction and that the conviction for wearing and carrying a handgun merged into the conviction for use of a handgun in the commission of a crime of violence.

handgun violation, reversal of the handgun conviction is similarly compelled. For the reasons set forth below, we will affirm both convictions.

## I

■■■ The question of whether attempted voluntary manslaughter is recognized as a crime under the common law is one of first impression in this state.[2] In the case *sub judice*, appellant was convicted of attempting to commit a type of voluntary manslaughter that involves the felonious killing of an individual in the heat of passion in response to legally adequate provocation. The evidence at trial indicated that appellant aimed and fired a deadly weapon at a vital part of the victim's anatomy. The jury was thus allowed to infer that appellant had the specific intent to kill the victim. *Glenn v. State*, 68 Md.App. 379, 410–11, 511 A.2d 1110 (1986). Our holding in this case, acknowledging the existence of the crime of attempted voluntary manslaughter, is accordingly limited to the specific form of attempted voluntary manslaughter involved herein.[3]

---

**2.** In *Hardy v. State*, 301 Md. 124, 140 (1984), the Court of Appeals, in *dicta*, suggested that where the evidence of criminal culpability falls short of that necessary for conviction of attempted murder in the first degree, the crime proved might be attempted murder in the second degree or attempted voluntary manslaughter.

**3.** A variety of mitigating factors may reduce murder to manslaughter. The rule of provocation, involved in the case *sub judice*, allows a homicide which would otherwise be considered murder to be reduced to manslaughter where four requirements are met: "(1) There must have been adequate provocation; (2) The killing must have been in the heat of passion; (3) It must have been a sudden heat of passion— that is, the killing must have followed the provocation before there had been a reasonable opportunity for the passion to cool; (4) There must have been a causal connection between the provocation, the passion, and the fatal act." *Carter v. State*, 66 Md.App. 567, 571, 505 A.2d 545 (1986); *Cunningham v. State*, 58 Md.App. 249, 257, 473 A.2d 40 (1984); *Tripp v. State*, 36 Md.App. 459, 465–66, 374 A.2d 384, *cert. denied*, 281 Md. 745 (1977); *Whitehead v. State*, 9 Md.App. 7, 11, 262 A.2d 316 (1970).

In addition, various so-called "imperfect" defenses may provide the necessary mitigation to reduce murder to voluntary manslaughter.

Under Maryland law the crime of attempt consists of a specific intent to commit a particular crime coupled with some overt act in furtherance of the intent going beyond mere preparation. *Young v. State,* 303 Md. 298, 306, 493 A.2d 352 (1985); *Hardy v. State,* 301 Md. 124, 138–39, 482 A.2d 474 (1984); *Lightfoot v. State,* 278 Md. 231, 237–38, 360 A.2d 426 (1976); *Frye v. State,* 62 Md.App. 310, 318, 489 A.2d 71 *cert. denied,* 303 Md. 618, 495 A.2d 837 (1985); *Gray v. State,* 43 Md.App. 238, 239, 403 A.2d 853 *cert. denied,* 286 Md. 747 (1979).

The thrust of appellant's argument is that the crime of attempted voluntary manslaughter is a legal and logical impossibility in that the formation of the specific intent necessary for a criminal attempt is precluded by the heat of passion element of voluntary manslaughter. Appellant, however, fatally misconstrues the nature of the offense of voluntary manslaughter and erroneously assumes the crime comprehends only unintentional homicides.[4]

---

*See, e.g., Law v. State,* 29 Md.App. 457, 462–64, 349 A.2d 295 (1975), *cert. denied,* 278 Md. 726 (1976) (imperfect defense of habitation); *Wentworth v. State,* 29 Md.App. 110, 115, 349 A.2d 421 (1975), *cert. denied,* 278 Md. 735 (1976) (imperfect defense of duress); *Shuck v. State,* 29 Md.App. 33, 40–44, 349 A.2d 378 (1975), *cert. denied,* 278 Md. 733 (1976) (imperfect self-defense). We express no opinion as to whether the crime of attempted voluntary manslaughter may be committed where one of the "imperfect" defenses is involved. We further decline to determine whether there may be an attempted voluntary manslaughter where an intent to do grievous bodily injury, rather than an intent to kill, is involved. Finally, we express no opinion as to whether the crime of attempted involuntary (unintentional) manslaughter may be recognized.

4. Appellant relies on a single footnote within a single decision as support for the proposition that voluntary manslaughter is "the hot-blooded, unintentional killing in response to adequate legal provocation...." *Brown v. State,* 44 Md.App. 71, 74 n. 1, 410 A.2d 17 (1979). As noted above, the vast wealth of Maryland authority is to the contrary. Moreover, the statement made in *Brown* was *dicta.* The only question presented there was the sufficiency of the indictment to charge the appellant with the crime of murder. *Id.* at 72, 410 A.2d 17. Finally, the opinion is but one of many decisions of the appellate courts of this state which failed to articulate fully the distinction between the offenses of murder and manslaughter, a matter cleared

There are critical differences between voluntary manslaughter and involuntary manslaughter, as well as critical distinctions between voluntary manslaughter and murder which are necessary to explore to expose the fallacy of appellant's argument.

It has long been the law of this state that voluntary manslaughter involves intentional homicide whereas involuntary manslaughter encompasses only unintentional homicide. Decades ago, the Court of Appeals defined the crime of manslaughter as the "unlawful and felonious killing of another, without malice aforethought, either express or implied, and is either voluntary or involuntary homicide depending on the fact whether there was an intention to kill or not." *Neusbaum v. State*, 156 Md. 149, 155, 143 A. 872 (1928). *See also Chase v. Jennifer*, 219 Md. 564, 569, 150 A.2d 251 (1959); *Rolfes v. State*, 10 Md.App. 204, 206–07, 268 A.2d 795 (1970). Voluntary manslaughter has been defined as " 'an intentional homicide done in sudden passion or heat of blood caused by reasonable provocation, and not with malice aforethought....' " *Gray v. State*, 6 Md.App. 677, 686; 253 A.2d 395, *cert. denied*, 256 Md. 745 (1969) (quoting W. Clark & W. Marshall, *Law of Crimes* 620 (6th ed., M. Wingersky rev. 1958). *See also* F. Wharton, *Wharton's Criminal Law* 235–36 (14th ed., C. Torcia rev. 1978 & Supp.1986); W. LaFave & A. Scott, *Criminal Law* 653–54 (2d ed. 1986); W. Clark & W. Marshall, *A Treatise on the Law of Crimes* 693 (7th ed., M. Barnes rev. 1975).

Involuntary manslaughter, on the other hand, has been defined as "the killing of another unintentionally and without malice (1) in doing some unlawful act not amounting to a felony or (2) in negligently doing some act lawful in itself, or (3) by the negligent omission to perform a legal duty." To this basic definition, Maryland decisions have added certain qualifications, namely that as to the first class of involuntary manslaughter the unlawful act must be *malum*

---

up in *Glenn v. State*, 68 Md.App. 379, 511 A.2d 1110 (1986), and discussed *infra*.

*in se* and not merely *malum prohibitum,* and it must also be dangerous to life; with respect to the second and third classes, the negligence must be gross, that is, criminally culpable. *Rolfes, supra,* 10 Md.App. at 207, 268 A.2d 795 (quoting *State v. Gibson,* 4 Md.App. 236, 242, 242 A.2d 575 (1968), *aff'd,* 254 Md. 399, 254 A.2d 691 (1969).

The above definitions of manslaughter are correct in the same sense they properly distinguish between the classes of voluntary manslaughter and involuntary manslaughter on the basis of the nature of the homicide involved—*i.e.,* intentional or unintentional. They are plagued, however, by the same error that has traditionally been made by appellate courts over the years in attempting to distinguish the offense of murder from the mitigated homicides known as manslaughter. The courts have long held that the distinction between murder and manslaughter is the presence of malice in the case of murder and the absence of malice in the case of manslaughter. *State v. Faulkner,* 301 Md. 482, 485, 483 A.2d 759 (1984); *State v. Ward,* 284 Md. 189, 195, 396 A.2d 1041 (1978), *aff'd,* 290 Md. 76, 427 A.2d 1008 (1981); *Chase, supra,* 219 Md. at 569, 150 A.2d 251; *Chisley v. State,* 202 Md. 87, 105, 95 A.2d 577 (1953); *Whitehead v. State,* 9 Md.App. 7, 10, 262 A.2d 316 (1970). Judge Moylan, writing for this Court in *Glenn v. State, supra,* explained that the proposition that malice is that which separates murder from manslaughter is but a sore half-truth. 68 Md.App. at 404–05, 511 A.2d 110. Malice is, in fact, a tripartite compound. Its elements are: (1) the intent to kill or one of three other qualifying *mentes reae;* [5] (2) the absence of justification or excuse; and (3) the absence of mitigation. *Id.* at 404, 511 A.2d 110. *See also, Tripp v. State,* 36 Md.App. at 477, 374 A.2d 384. The malice components of intent and the absence of justification are shared by murder and voluntary manslaughter alike. *Glenn,* 68 Md.App. at 404, 511 A.2d 110. As Judge Moylan explicated

---

**5.** For a discussion of the other qualifying *mentes reae,* see *Glenn, supra,* 68 Md.App. at 384–85, 511 A.2d 110.

in *Glenn,* "certain forms of mitigated homicide, such as hot-blooded response to legally adequate provocation ... involve a specific intent to kill." *Id.* at 396, 511 A.2d 110. *See also* Clark & Marshall, *Law of Crimes, supra,* § 10.11, at 697 (voluntary manslaughter and murder may both involve an intention to kill).

It is the presence or absence of only one of these components of malice—the circumstances of mitigation—which separates murder from manslaughter. *Glenn, supra,* 68 Md.App. at 405, 511 A.2d 110. *See also Wentworth v. State,* 29 Md.App. 110, 115, 349 A.2d 421 (1975), *cert. denied,* 278 Md. 735 (1976). Thus, the difference between the two offenses is not the absence of malice in *all* its aspects from voluntary manslaughter, but in only a *single* aspect.

The form of mitigated homicide involved in the matter before us—hot-blooded response to legally adequate provocation—may involve the specific intent to kill. As previously mentioned, there was evidence that appellant fired a deadly weapon at a vital part of the victim's body, which permitted an inference that he intended to kill the victim.

The crime of attempted voluntary manslaughter of the hot-blooded variety is not a legal or logical absurdity, for the actor acts with a specific intent to kill. In a decision recognizing the existence of the crime of attempted voluntary manslaughter, the court of a sister state elucidated on this point:

> It is true that a person cannot plot in advance to kill in the heat of passion. Such a calculated plan is logically inconsistent with a spontaneous act committed in a moment of passion. But an assailant can form an intent to kill even under a paroxysm of passion. And this is true regardless of whether he is successful or unsuccessful in carrying out his intent. There is nothing illogical or absurd in a finding that a person who unsuccessfully attempted to kill another did so with the intent to kill which was formed in a heat of passion....

*People v. Van Ronk,* 171 Cal.App.3d 818, 217 Cal.Rptr. 581, 584 (Cal.App.3d Dist.1985).

In support of his position, appellant cites several decisions of the courts of other states that have held there is no such crime as attempted voluntary manslaughter. *See People v. Brown,* 21 A.D.2d 738, 249 N.Y.S.2d 922, 923 (1964); *overruled on other grounds, People v. Jackson,* 49 A.D.2d 680, 370 N.Y.S.2d 739 (1975); *People v. Reagan,* 111 Ill.App.3d 945, 67 Ill.Dec. 506, 444 N.E.2d 742, 744 (1982), *aff'd,* 99 Ill.2d 238, 75 Ill.Dec. 701, 457 N.E.2d 1260 (1983); *People v. Weeks,* 86 Ill.App.2d 480, 230 N.E.2d 12, 14 (1967).

These decisions have been severely criticized by commentators as failing to recognize that voluntary manslaughter—homicide mitigated downward from murder as a result of serious, legally adequate provocation—can be committed with an intent to kill. *See* LaFave & Scott, *Criminal Law, supra,* § 6.2 Attempts—Acts and Mental State, at 502 n. 88; Sachs, *Is Attempt to Commit Voluntary Manslaughter A Possible Crime?,* 71 Ill.B.J. 166, 167–70 (1982) (hereinafter referred to as Sachs, *Attempt*); *see generally* Smith, *Two Problems in Criminal Attempts,* 70 Harv.L.Rev. 422 (1957).

The vast majority of states which have decided the issue have acknowledged the existence of the offense of attempted voluntary manslaughter. *See, e.g., People v. Williams,* 102 Cal.App.3d 1018, 1025, 162 Cal.Rptr. 748, 752 (1980); *Taylor v. State,* 444 So.2d 931, 933–34 (Fla.1983); *Anthony v. State,* 274 Ind. 206, 409 N.E.2d 632, 636 (1980); *State v. Harper,* 205 La. 228, 17 So.2d 260, 261 (1944); *People v. Genes,* 58 Mich.App. 108, 227 N.W.2d 241, 242–43 (1975); *Ex parte Buggs,* 644 S.W.2d 748, 750 (Tex.Cr.App.1983); *State v. Norman,* 580 P.2d 237, 239 (Utah 1978). *See also Commonwealth v. Hebert,* 373 Mass. 535, 368 N.E.2d 1204, 1206–07 (1977) (offense of attempted voluntary manslaughter logically possible, though not recognized as a crime by the court because of possible confusion with crime of assault with intent to kill); Sachs, *Attempt,* 71 Ill.B.J. at 166.

In accord with the great weight of authority, we hold that where an individual entertaining a specific intent to kill attempts to perpetrate a homicide in the heat of passion in response to legally adequate provocation, the individual may be properly convicted of attempted voluntary manslaughter.[6]

## II

■ Appellant was convicted under article 27, section 36B(d) of using a handgun in the commission of a crime of violence. Md.Code Ann., art. 27, § 36B(d) (1957 & Supp. 1986). The term "crime of violence" means: "abduction; arson, burglary, including common law and all statutory and storehouse forms of burglary offenses; escape; housebreaking; kidnapping; *manslaughter, excepting involuntary manslaughter;* mayhem; murder; rape; robbery; robbery with a deadly weapon; sexual offense in the first degree; and sodomy; or an *attempt* to commit any of the aforesaid offenses; ..." Md.Code Ann., art. 27, § 441 (1957 & Supp.1986) (emphasis added). This statutory definition of

---

6. Appellant additionally argued that certain cases related to the mitigating effect of voluntary intoxication on the degree of culpability in homicide cases indicate the nonexistence of the crime of attempted voluntary manslaughter. He asserts that "it is well-settled that while voluntary intoxication can negate premeditation and deliberation and thus reduce first degree murder to second degree murder, it will not reduce second degree murder, which does not require a specific intent, to manslaughter." He cites *Biggs v. State,* 56 Md.App. 638, 649, 468 A.2d 669 (1983), *cert. denied,* 299 Md. 425, 474 A.2d 218 (1984); *Bateman v. State,* 10 Md.App. 630, 637, 272 A.2d 64, *cert. denied,* 261 Md. 721 (1971); *Mock v. State,* 2 Md.App. 771, 774–75, 237 A.2d 811 *cert. denied,* 250 Md. 732 (1968), in support of that assertion. From this unsound proposition of law, based upon a misreading of *Biggs* and a misinterpretation of *dicta* in *Bateman* and *Mock,* appellant leaps to the conclusion that "*a fortiori,* voluntary intoxication will not reduce voluntary manslaughter to assault. The law would be otherwise if voluntary manslaughter required a specific intent." For this latter proposition, of course, no authority is cited. It is not necessary for the resolution of this case to reach such an issue. As discussed above, the crime of voluntary manslaughter may be committed with the specific intent to kill. As such, cases related to the non-applicability of the voluntary intoxication defense to general intent crimes are inapposite.

"crime of violence" clearly encompasses the offense of attempted voluntary manslaughter.

In light of this statutory definition and our disposition of the first issue raised by appellant, we find no merit to his contention that the offense of attempted voluntary manslaughter cannot serve as the predicate crime of violence for conviction under article 27, section 36B(d).

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.