Filed 10/4/24  P. v. Pittman CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C098073 |
| v. | (Super. Ct. No. STKCRFE20190005889) |
| DAMAR LONNEL PITTMAN, | |
| Defendant and Appellant. | |

Damar Lonnel Pittman beat his great uncle to death with a bat when he thought someone had poured out his drink.  A jury convicted defendant of first degree murder, and the trial court found he had two prior serious felony convictions.  The trial court sentenced defendant to 75 years to life in prison.

1

Defendant now contends (1) the trial court's responses to jury questions blurred the distinctions between first and second degree murder, and (2) there is insufficient evidence of premeditation and deliberation.

Finding no basis for reversal, we will affirm the judgment.

BACKGROUND

During the relevant time period, defendant lived with his great uncles Gregory and Larry. Gregory's girlfriend also lived with them. Months before the murder, Gregory had obtained a restraining order against defendant, and Gregory's girlfriend had served it, telling defendant it was about him moving out of the house.

Gregory celebrated his 60th birthday at the house on the afternoon of April 26, 2019. Defendant drank brandy and beer, but at some point he yelled that someone had poured out his drink. At the time, Gregory and his girlfriend were outside with others, and Larry was in his bedroom. Defendant locked the front door from the inside and turned up the music. The side and back doors of the house were also locked. Defendant subsequently opened the front door holding a knife and told people to get off the porch, threatening to "slash" them.

Someone called the police, and responding officers repeatedly asked defendant to exit the house, but he did not cooperate. When an officer said she wanted to check on the other person in the house, defendant told the officers to leave. He said there was no one else inside the house and everything was fine. However, when an officer saw a man lying on a bed with blood on his head, officers broke through a door and entered the house. They found Larry on the bed with no pulse. He died from blunt force head injuries.

A wood bat, typically kept in Gregory's bedroom, was found in a vacant bedroom. There was apparent blood on it. Larry's DNA was found on the barrel of the bat. DNA from defendant, Larry, and Gregory was found on the handle of the bat.

The jury found defendant guilty of first degree murder. In the sanity phase of the trial, the jury found defendant was legally sane at the time he committed the murder.

2

Upon waiver of defendant's right to a jury trial on the prior strike allegations, the trial court found true allegations that defendant had two prior serious felony convictions. The trial court sentenced defendant to 75 years to life in prison.

DISCUSSION

I

Defendant contends the trial court's responses to jury questions blurred the distinctions between first and second degree murder.

A

The jury received a written copy of the jury instructions. Some pages were numbered, but not all, and the numbering was not sequential. The trial court instructed on murder with CALCRIM Nos. 500, 520, 521, and 625. CALCRIM No. 500 (homicide) bore page No. 23. It was followed by CALCRIM No. 520 (first or second degree murder), bearing page Nos. 24 and 25. Then followed CALCRIM No. 521 (first degree murder). The first page of CALCRIM No. 521 was not numbered, but the following pages were numbered 27, 28, and 29. The next instruction in the packet was CALCRIM No. 625 (voluntary intoxication), which had page No. 383.

On the first day of jury deliberations, the trial court received a note from the jury that read: "Clarification on 2nd degree murder, missing page 30, CALCRIM # 520." The trial court did not think there was a missing page 30 and brought the jury in for clarification. The trial court explained to the jury that there was no missing page, and the foreperson accepted the explanation. But the foreperson said there was no instruction on second degree murder. The following colloquy then occurred:

"THE COURT: The way that murder works is, I gave you the first instruction, which is 500, homicide. And then it goes to 520, first or second-degree murder, and that defines murder. Then 521 defines first-degree murder. If you find the defendant guilty of murder, then you decide if it's first degree or second degree. And if it's not first degree, then that means it's second degree. If you find the defendant guilty of murder.

3

"THE FOREPERSON: Okay.

"THE COURT: Do you understand that?

"THE FOREPERSON: Yes.

"THE COURT: But I'll give you the classic definition of second-degree murder. A person goes up to another person and kills that person. Period. No premeditation, no deliberation, just kills with an intent to kill with malice aforethought. Malice can be express or implied. Express means acted with an intent to kill. Implied means -- I don't want to say that off the top of my head.

"THE FOREPERSON: The natural and probable?

"THE COURT: Yes. Let's see.

"THE FOREPERSON: The natural and probable consequence --

"THE COURT: Is that in 520 or 521?

"THE FOREPERSON: This is from 520.

"THE COURT: 520, okay. Yes, so that's 520, first page. Two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder. The defendant had express malice if he unlawfully intended to kill. The defendant had implied malice if he intentionally committed the act, the natural and probable consequences of the act were dangerous to human life; at the time he acted he knew his act was dangerous to human life; and four, he deliberately acted with conscious disregard for human life. So does that answer the question?

"THE FOREPERSON: Um-hmm.

"THE COURT: Okay. And, once again, it requires all 12 jurors for any finding. Anyone else with any questions?

"THE FOREPERSON: I do.

"THE COURT: Yes.

"THE FOREPERSON: What's the difference between an intention to kill and deliberation and premeditation?

4

"THE COURT:  It's all spelled out in 520 and 521.  So intent to kill is -- I think it should be pretty self-explanatory -- if a person does an act intending to kill a person.  So the second question was, what is premeditation and deliberation?

"A JUROR:  How is that different from intending to kill someone?

"THE COURT:  Well, premeditation and deliberation is in 521.  Premeditation is he decided to kill before completing the act that caused death.  As opposed to my example, someone walks up to somebody on the street, pulls out a gun, bang, kills them.  No premeditation.  No deliberation.  As opposed to a person sees a person walking down the street; I am going to kill that person.  Follows the person, gets up close to the person, pulls the gun, I'm going to shoot that person in the head and kill that person, bang.  That can be premeditation and deliberation because, the question is, for premeditation, did the person decide to kill before completing the act that caused the death.  [¶]  Deliberation.  Let's see.  Willfully, deliberately and with premeditation.  The defendant acted willfully if he intended to kill.  The defendant acted deliberately if he carefully weighed the considerations for and against his choice, and knowing the consequences, decided to kill.  The defendant acted with premeditation if he decided to kill before completing the acts that caused death.  [¶]  So there's a certain overlap between intent to kill, premeditation and deliberation, but I invite you to look at 520, 521, they explain what the law is on that.  Yes.

"A JUROR:  So willfully, deliberately, premeditated, are those what are referred to as the theories?  That it says that all jurors do not have to agree upon all -- are those the theories?  On the CALCRIM 521, under first-degree murder, it says, 'But all of you do not need to agree on the same theory,' at the top.

"THE COURT:  Yes.  That is the theory, willful, deliberate, with premeditation, that's the theory.

"A JUROR:  Okay.

5

"THE COURT: In this case. So to find the defendant guilty of first-degree murder, the People have to prove beyond a reasonable doubt he acted willfully, deliberately, and with premeditation.

"A JUROR: Okay.

"THE COURT: Any other questions?

"A JUROR: We're kind of back to where we were.

"THE COURT: Back to where we were?

"A JUROR: A little bit.

"THE COURT: Okay. Let's see. It's ten minutes to 11:00, two and a half hours -- I see a question over here.

"A JUROR: Either choice we make, we all 12 have to agree on one, though, right?

"THE COURT: Yes, you do.

"A JUROR: So if there's more that agree with this one, less that agree with this one, we have to try to --

"THE COURT: Then you have not reached an agreement.

"A JUROR: We have to deliberate to --

"THE COURT: Yes. Just don't kill each other.

"A JUROR: Right.

"THE COURT: Yes. Any other questions?

"A JUROR: Is pizza on you today?

"THE COURT: You know, there was a time, sadly, when we provided lunch for our jurors, and it was Italian food, usually was spaghetti, but those days are over. Yes.

"A JUROR: I saw there was a verdict form that included manslaughter, but I didn't see anything on manslaughter in the instructions.

"THE COURT: There is an instruction on manslaughter and it is 8.40, defines voluntary manslaughter. Do you have the instructions here?

6

"A JUROR:  Yes.

"THE COURT:  Want to take a quick look and make sure it's in there?  It's near the end.  It's right after --

"A JUROR:  Got it.

"THE COURT:  Okay.  All right.  So that's the definition.  Anything else?  We will send the jury back for further deliberations."

Defendant's trial counsel did not object to any statement made by the trial court.

B

As a threshold matter, the Attorney General argues defendant forfeited his contention because he did not object to the trial court's responses at the trial.  It is true that such a contention is forfeited if the trial court's response is generally correct and the defendant did not object to the response or request clarification or modification.  (*People v. Dykes* (2009) 46 Cal.4th 731, 802.)  But because defendant claims the trial court error removed an element of first degree murder and affected his substantial rights, we exercise our discretion to address the merits of the contention.  (*People v. Hishmeh* (2020) 52 Cal.App.5th 46, 51-52.)

We review the correctness of the trial court's responses de novo, considering whether there is a reasonable likelihood the jury understood them as the defendant asserts.  (*People v. Doane* (2021) 66 Cal.App.5th 965, 980.)  We look at the challenged language and, if necessary, the charge in its entirety, and we determine whether the instruction states the applicable law correctly.  (*Id.* at pp. 980-981.)

Defendant claims that when the jury indicated confusion over the difference between intent to kill and premeditation, the trial court erred by simply referring the jury back to CALCRIM Nos. 520 and 521.  But the trial court did not simply refer the jury back to those instructions.  It elaborated that intent to kill meant "intending to kill a person;" deliberation meant the defendant carefully weighed the considerations for and against his choice, and knowing the consequences, decided to kill; and premeditation

7

meant deciding to kill before completing the acts that caused death.  Those explanations correctly stated the law.

In general, first degree murder is the unlawful killing of a human being with malice aforethought, with the additional elements of willfulness, premeditation and deliberation.  (§§ 187, subd. (a), 189, subd. (a); *People v. Chiu* (2014) 59 Cal.4th 155, 166 (*Chiu*), superseded by statute on another point as stated in *People v. Gentile* (2020) 10 Cal. 5th 830, 849.)  It requires more than a showing of express malice or intent to kill.  (*Chiu*, at p. 166.)  "[A]n intentional killing is not first degree murder unless the intent to kill was formed upon a preexisting reflection and was the subject of actual deliberation and forethought."  (*People v. Van Ronk* (1985) 171 Cal.App.3d 818, 823.)  Intent to kill is, therefore, not the equivalent of premeditation and deliberation.  (*People v. Bender* (1945) 27 Cal.2d 164, 180-181.)  " ' " '[P]remeditation' means thought over in advance," ' and ' " '[d]eliberation' refers to careful weighing of considerations in forming a course of action. . . ." ' [Citation.]  'An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse.' " (*People v. Pearson* (2013) 56 Cal.4th 393, 443 (*Pearson*).)  The premeditation and deliberation must occur before the defendant completes the acts that caused the death.  (*People v. Gomez* (2018) 6 Cal.5th 243, 282; *Chiu*, at p. 166.)  The trial court did not suggest intent to kill was equivalent to premeditation and deliberation.  Additionally, the jury did not indicate any further need for explanation after the trial court's responses and query whether the jurors had any other questions.

Defendant also contends the trial court's example of premeditation improperly suggested that any decision to kill before completion of the act of killing could constitute premeditation and deliberation.

The trial court gave the jury the following scenario: "a person sees a person walking down the street; I am going to kill that person.  Follows the person, gets up close

8

to the person, pulls the gun, I'm going to shoot that person in the head and kill that person, bang." It said such a scenario could constitute premeditation because the question for premeditation is whether the defendant decided to kill before completing the act that caused the death. The trial court contrasted premeditation with walking up to somebody on the street, pulling out a gun, and shooting with no premeditation and deliberation.

We have carefully reviewed the trial court's comments. Its statement that there is "a certain overlap between intent to kill, premeditation and deliberation" was ambiguous. However, its hypothetical did not suggest that any decision to kill before the act of killing constitutes premeditation. Instead, the hypothetical included planning activities and a manner of killing from which a jury could reasonably infer premeditation and deliberation; in particular, the defendant in the hypothetical followed the victim and shot the victim at close range and in the head, ensuring death. (*People v. Cage* (2015) 62 Cal.4th 256, 277 (*Cage*) [a close-range gunshot to the face supported an inference of premeditation and deliberation]; *People v. Mendoza* (2011) 52 Cal.4th 1056, 1069, 1070 (*Mendoza*) [surprising the victim, stepping close to him and shooting him in the face showed planning activity for purposes of premeditation and deliberation]; *People v. Koontz* (2002) 27 Cal.4th 1041, 1081-1082 (*Koontz*) [firing a shot at a vital area of the body at close range, among other evidence, showed premeditation and deliberation].) The trial court did not collapse premeditation and deliberation into another form of intentionality as defendant suggests. It told the jury if it found that defendant committed murder, it must decide whether the murder was in the first or second degree. Among other things, the trial court referred the jury to CALCRIM No. 521, which stated that a first degree murder conviction required a finding that defendant acted willfully, deliberately and with premeditation. The instructions were clear that premeditation and deliberation were required for first degree murder. The trial court's responses did not

9

suggest that the jury could find defendant guilty of first degree murder based solely on intent to kill.

Defendant further urges that the trial court erred in identifying first degree premeditated murder as the only theory of liability. We disagree. The first paragraph of CALCRIM No. 521 states that the jury need not agree on the same theory to find defendant guilty of first degree murder. Referencing CALCRIM No. 521, a juror asked whether committing murder willfully and with premeditation and deliberation was a theory of first degree murder. The trial court responded in the affirmative, but it did not tell the jury that first degree murder was the only theory of liability in the case.

A juror commented that they were "kind of back to where we were" following the trial court's explanations. Defendant argues the comment indicated the jury was still confused about the distinction between first and second degree murder. We interpret the juror comment, however, to mean that the jury could not reach a verdict prior to the trial court's explanations and the jury would have to continue to deliberate. No juror indicated they remained confused or that they had more questions.

Defendant has not established that the trial court's responses require reversal.

## II

As a second contention, defendant argues there is insufficient evidence of premeditation and deliberation.

In determining whether sufficient evidence supports a conviction, " 'we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence -- evidence that is reasonable, credible and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances

10

might also reasonably be reconciled with a contrary finding." [Citation.]' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) In addition, " '[w]e "must accept logical inferences that the jury might have drawn from the circumstantial evidence." ' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) We do not reweigh evidence or reevaluate witness credibility. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

As we have explained, premeditation means " ' "thought over in advance" ' " and deliberation refers to " ' "careful weighing of considerations in forming a course of action." ' " (*Pearson, supra*, 56 Cal.4th at p. 443.) " 'The process of premeditation and deliberation does not require any extended period of time. "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . ." ' " (*Koontz, supra*, 27 Cal.4th at p. 1080.) In *People v. Anderson* (1968) 70 Cal.2d 15 (*Anderson*), the California Supreme Court identified types of evidence that may assist a reviewing court in assessing the sufficiency of evidence supporting a finding of premeditation and deliberation: planning activity, motive to kill, and the manner of killing. (*People v. Brooks* (2017) 3 Cal.5th 1, 58-59 (*Brooks*); *Mendoza, supra*, 52 Cal.4th at p. 1069.) These types of evidence are not all required or determinative. (*People v. Streeter* (2012) 54 Cal.4th 205, 242; *People v. Gonzalez* (2012) 54 Cal.4th 643, 663 (*Gonzalez*); *Koontz*, at p. 1081.) They are intended to help an appellate court assess whether the evidence supports an inference that the killing was the result of preexisting reflection and weighing of considerations rather than an unconsidered or rash impulse. (*Koontz*, at p. 1081.)

The People presented circumstantial evidence suggestive of planning activity. Defendant locked the front door to the house and turned the music up inside. Responding officers found that the side and back doors of the house were also locked. When someone takes steps to conceal their conduct, it evidences planning. (*Brooks, supra*, 3 Cal.5th at p. 59 [hiding car from view]; *Gonzalez, supra*, 54 Cal.4th at p. 664

11

[obscuring license plate]; *People v. Arcega* (1982) 32 Cal.3d 504, 519 [drawing the curtains and pulling the shades down].)  Defendant went into Gregory's bedroom, retrieved the bat, crossed the hall to Larry's bedroom, and used the bat to repeatedly strike Larry, killing him.  Arming himself with a bat before entering Larry's bedroom shows planning.  (*Gonzalez,* at p. 664 [bringing a loaded rifle to the ambush site]; *Koontz, supra*, 27 Cal.4th at pp. 1081-1082 [arming himself before following the victim]; *People v. Perez* (1992) 2 Cal.4th 1117, 1126-1127 (*Perez*) [surreptitiously entering the victim's house and getting a knife, used to stab the victim, from her kitchen].)

Defendant argues the presence of Larry's DNA on the handle of the bat suggests Larry retrieved the bat and defendant grabbed it from him.  Although such a scenario is possible, the jury was not required to accept it, and we do not reevaluate the evidence.  (*Brooks, supra*, 3 Cal.5th at p. 58.)

The manner of killing also suggests premeditated and deliberate action.  Larry was hit five times in the head.  He was hit on both sides of his head, causing deep tears in the skin and bleeding in his temporal muscles.  He was also hit on the top of his head, resulting in a depressed skull fracture.  In addition, he had a large scalp bruise on the back of his skull.  One of the fractures to his skull was caused by great force, typically seen in high-speed automobile crashes.  The orbital roof of both of his eyes and his nose and upper jaw were fractured.  All of the injuries were caused by blunt force trauma consistent with being hit by a bat.  Delivering multiple blows to Larry's head with sufficient force to cause a depressed skull fracture and another fracture typically seen in high-speed crashes suggests a preconceived plan to ensure death.

Although motive is a factor identified as relevant in *Anderson, supra*, 70 Cal.2d 15, the California Supreme Court has not required proof of a specific motive to affirm a first degree murder judgment.  (*People v. Halvorsen* (2007) 42 Cal.4th 379, 421.) " 'A senseless, random, but premeditated, killing supports a verdict of first degree murder.' "  (*Ibid.*)  Here, however, there was evidence defendant was angry because

12

he believed someone had emptied his drink, and Larry was the only person in the house at the time. Such a motive may appear irrational, but an irrational motive can support a finding of premeditation and deliberation. (*People v. Pettigrew* (2021) 62 Cal.App.5th 477, 495; see *People v. Jackson* (1989) 49 Cal.3d 1170, 1200 [irrational anger may be sufficient evidence of motive to support a finding of premeditation and deliberation].) Additionally, even though Gregory was the person who obtained the restraining order against defendant, defendant was aware of actions to remove him from the house. A rational jury could have found that defendant was angry with the other people in the house. (See *Pettigrew,* at p. 494 [concluding that a restraining order provided a motive for killing the victim].)

A defendant's actions after the killing may also negate a rash impulse. (*Cage, supra*, 62 Cal.4th at p. 277 [defendant did not immediately leave the scene after the killing]; *Perez, supra*, 2 Cal.4th at p. 1128 [searching the victim's house after the killing was inconsistent with a rash, impulsive killing].) Here, defendant remained in the locked house, refused to allow police officers to check on Larry, and told the officers everything was fine and nobody else was in the house. A jury could reasonably infer from defendant's actions, together with all of the other circumstances, that defendant did not act as a result of unconsidered impulse. (*Koontz, supra*, 27 Cal.4th at p. 1082 [shooting the victim in the abdomen and then preventing another from summoning help supported a verdict of premeditated and deliberate first degree murder]; cf. *People v. Boatman* (2013) 221 Cal.App.4th 1253, 1267 [concluding that defendant's acts after the shooting were inconsistent with someone who killed pursuant to a preconceived plan where the defendant tried to resuscitate the victim and directed another to call for help].)

Even if a reasonable jury could have found the evidence did not support premeditation and deliberation, a conviction for first degree murder based on premeditation and deliberation must stand if the circumstances reasonably justify the jury's findings. (*People v. Salazar* (2016) 63 Cal.4th 214, 245; *Perez, supra*, 2 Cal.4th

13

at p. 1126.)  Here, substantial evidence reasonably justifies the jury's finding of premeditation and deliberation.

DISPOSITION

The judgment is affirmed.

_____/S/_____<br>MAURO, Acting P. J.

We concur:

_____/S/_____
KRAUSE, J.

_____/S/_____
MESIWALA, J.

14