Filed 11/26/25  P. v. Bustamonte CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MARK ANTHONY BUSTAMONTE,<br><br>    Defendant and Appellant. | F087950<br><br>(Super. Ct. No. SC061402A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

Deborah A. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Dina Petrushenko and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

In 1995, defendant and appellant Mark Anthony Bustamonte was convicted of attempted murder, attempted voluntary manslaughter, and assault with a firearm. In 2024, the trial court denied defendant's petition for resentencing under Penal Code section 1172.6.[1] The court found defendant was ineligible for resentencing as a matter of law because he was not convicted upon a theory of natural and probable consequences or felony murder. The court further found defendant was ineligible for relief because he was the actual attempted killer and whether he harbored malice was "irrelevant."

On appeal, defendant contends the trial court erred by denying his petition on the grounds that whether he harbored malice was irrelevant and refusing to consider his new evidence of self-defense. The Attorney General responds that defendant is ineligible for relief as a matter of law because there was no jury instruction on the natural and probable consequences theory, defendant was the actual shooter, and the trial court was free to reject his self-defense claim. The Attorney General argues even if some of the court's analysis was improper, its ruling denying defendant's petition was correct and should be affirmed.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Shooting[2]

On the night of December 1, 1994, Joseph (Joe) L., Ruben C., John U., and John's wife, Mary Ann U., were socializing with friends at a bar in Bakersfield. Except for Mary Ann, the group was drinking alcohol at the bar. Mary Ann and James Soto talked to each other in the bar as they knew each other from attending school together.

---

[1]     Penal Code section 1172.6 was originally enacted as section 1170.95 but was renumbered without substantive change, effective June 30, 2022. (Stats. 2022, ch. 58, § 10.) We refer to the current statutory number throughout.

Undesignated statutory references are to the Penal Code.

[2]     This summary of facts is drawn from the record of defendant's trial. We provide this summary to give context to defendant's appeal.

John, Mary Ann, Joe, and Ruben were outside the bar at about 1:30 a.m. or 1:45 a.m. when the bar was closing. John and Soto began arguing in the parking lot because Soto had been flirting with Mary Ann in the bar. Defendant stood next to Soto while Soto and John argued. After John moved closer to Soto, Soto pulled out a handgun and told John he better back off or Soto would shoot him. Mary Ann told Soto do not shoot him, "that's my husband," and to put the gun away. Soto screamed, "better tell him to back off or I'll kill him." Soto then discharged the gun towards the cement. John did not display a weapon or try to hit Soto or defendant.

After Soto first fired the gun, Mary Ann and John backed off and went behind a white truck in the parking lot. Soto discharged another bullet, and Ruben and some bystanders jumped on Soto. Soto dropped the gun which flew underneath a car.

Defendant picked up the gun from the ground. Mary Ann, John, and Joe began running toward the front of the bar. Defendant ran after them while shooting the gun continuously in their direction and screaming he was going to kill them. John heard defendant say, "I'm going to kill you" a few times. As the group ran, Mary Ann looked back and saw defendant firing the gun straight at the group from five to six feet away while running after them. She heard the gun fired six to eight times.

Joe was hit once in the stomach and once in the back and was paralyzed from the waist down. Ruben was shot in the right hand when he tried to grab the gun during the struggle with Soto. A bullet grazed Ruben's head as he was running away while defendant was shooting. He suffered from headaches thereafter. John was shot in the abdomen. The bullet went through his intestines and damaged tissues in the arteries supplying the left leg. That leg was later amputated below the knee due to gangrene that developed from damage to his artery and blood clots. Mary Ann, though in the line of fire, was uninjured.

### B. The Information, Verdict, and Sentence

In February 1995, the Kern County District Attorney filed an information charging defendant with: four counts of willful, deliberate, premeditated attempted murder

3.

(§§ 664, 187, subd. (a); counts 1, 2, 4, & 6), and three counts of assault with a firearm (§ 245, subd. (a)(2); counts 3, 5, & 7). The attempted murder charges were pled in relation to: Joe (count 1), John (count 2), Ruben (count 4), and Mary Ann (count 6). The assault charges were pled in relation to: John (count 3), Ruben (count 5), and Mary Ann (count 7). The information alleged defendant personally used a firearm (§ 12022.5, subd. (a)) as to all counts and personally inflicted great bodily injury (§ 12022.7) as to counts 1 to 5. The information further alleged defendant had suffered one prior "strike" conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) which also qualified as a serious felony conviction (§ 667, subd. (a)(i)).

On June 22, 1995, the jury found defendant guilty of attempted murder without premeditation for Joe and John with true findings on the enhancements for personal use of a firearm and personal infliction of great bodily injury. For Ruben, the jury acquitted defendant of attempted murder, but found him guilty of the lesser included offense of attempted voluntary manslaughter (§§ 664, 192, subd. (a)) based upon a sudden quarrel or heat of passion with a true finding on the firearm enhancement. Defendant was also found guilty on all three counts of assault with a firearm with true findings on the firearm enhancement on all assault counts and the personal infliction of great bodily injury enhancement for only John (count 3). The jury acquitted defendant of the attempted murder of Mary Ann.[3]

On August 10, 1995, the trial court sentenced defendant as a second-strike offender to an aggregate term of 50 years, eight months. This court affirmed defendant's conviction and sentence in an unpublished opinion on direct appeal. (*People v. Bustamonte* (Feb. 28, 1997, F024476).)

---

[3]    Although the jury acquitted defendant of the attempted murder of Mary Ann (count 6), the jury found true the firearm enhancement on this count.

4.

## C. Resentencing Proceedings

On March 18, 2022, defendant filed a form petition for resentencing under section 1172.6. The prosecution filed a response arguing defendant was not eligible for relief because the information did not allow the prosecution to proceed on a theory of felony murder or the natural and probable consequences doctrine. The prosecution further argued defendant's petition must be denied because the jury already found defendant was the actual attempted killer who acted with the specific intent to kill.

In defendant's reply to the prosecution's opposition, he argued he may have been convicted based on imputed malice alone because the jury may have imputed Soto's malice against the victims to defendant. Defendant claimed he had a valid self-defense claim for his actions which would negate the necessary element of malice for attempted murder. Defendant further argued his age at the time of the shooting[4] must be considered in determining if he harbored malice.[5]

The trial court appointed counsel to defendant.[6] The court found a prima facie showing had been made on defendant's section 1172.6 petition and issued an order to show cause.[7]

On March 12, 2024, the trial court held an evidentiary hearing on defendant's section 1172.6 petition. The prosecution filed an evidentiary brief arguing defendant was ineligible for relief because he was the actual shooter who personally attempted to kill John and Joe. The prosecution asked the court to take judicial notice of the abstract of

---

[4] Defendant was born on January 20, 1973, and was 21 years old in December 1994.

[5] In his opposition brief, defendant also sought resentencing pursuant to section 1172.1. In an addendum to its ruling on defendant's section 1172.6 petition, the trial court chose not to respond to this request. (See § 1172.1, subd. (c) [a defendant is not entitled to petition for relief under section 1172.1 and "[i]f a defendant requests consideration for relief under this section, the court is not required to respond"].)

[6] Defendant's appointed counsel was later relieved after he retained private counsel.

[7] The trial court made a finding on three separate occasions that defendant had made a prima facie showing.

judgment, the reporter's transcript from the 1995 trial, the jury instructions given, and the verdict forms.

Defendant testified at the hearing. He went to the bar that night because Soto called and asked defendant to come pick him up. Defendant did not bring a firearm or go inside the bar when he arrived. He saw Soto come out of the bar with a group of people who surrounded Soto. Defendant got out of the car when he saw the group swarm Soto. He was running toward the "mob" when a gun was kicked in his direction. Before he could reach the gun, defendant was kicked in the head and fell to the ground. Defendant grabbed the gun while being kicked and beaten by some of the same people who swarmed Soto. The gun looked inoperable or jammed, but defendant was able to cock the gun back to make it operable. Defendant told the group to get back and pointed the gun in their direction because he was being hit and feared for his life. He had been stabbed in the head and side. Defendant told the group to "back the f[***] up, I'm serious," but the group continued to approach. He "could have possibly said," "I'll kill you." Defendant pulled the gun's trigger three or four times. He did not want to kill anyone and was not aiming at anyone specifically. On cross-examination, defendant confirmed he intended to pull the gun's trigger. Defendant offered no other new evidence besides his testimony.

On April 12, 2024, the trial court issued its written ruling denying defendant's section 1172.6 petition. The court concluded defendant was not convicted under a now invalid legal theory because the jury was not instructed on the felony-murder rule or the natural and probable consequences doctrine. No instructions were given that would have allowed the jury to impute the malice of another offender to defendant since the "jury was not even instructed on aiding and abetting." The court further found defendant was ineligible for relief because he was the actual attempted killer. The court stated "[p]roof of the existence of malice is not a required element for 'actual killers' under the exception in … Section 189[, subdivision] (e)(1)." The court concluded "whether [defendant] harbored malice or not is irrelevant" because defendant was the actual attempted killer.

6.

Defendant was also found ineligible for relief as an aider and abettor because he "acted with his own personal intent to kill" and was a major participant who acted with reckless indifference to human life. The court observed that section 1172.6 does not provide a mechanism for challenging a jury's prior factual findings and noted the defense theory during the 1995 trial was that defendant was not the shooter after Soto fired the first two shots. The court concluded section 1172.6 does not permit defendant to redo his trial and adopt a "whole new trial strategy" of self-defense because the only issue to be addressed is whether his convictions remain valid under the statute's ameliorative provisions. Lastly, the court stated attempted voluntary manslaughter is not one of the offenses identified in section 1172.6 and thus defendant was ineligible for relief on his attempted voluntary manslaughter conviction as a matter of law. The court noted even if section 1172.6 were amended to include attempted voluntary manslaughter, defendant's request for relief would still be denied based upon the court's analysis.

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant argues the trial court erred by concluding an actual killer who has been convicted of attempted murder is ineligible for resentencing without proof of malice. He also argues the court erred by refusing to consider his new evidence of self-defense. Defendant contends these two errors taken together were prejudicial, prevented him from receiving a fair hearing, and his section 1172.6 petition should be reinstated and the matter remanded for a new hearing.

### I. Eligibility for Relief

#### A. Applicable Law

"Attempted murder is defined as a ' "specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." ' [Citation.] A specific intent to kill requires express malice. [Citation.] Implied malice cannot support a conviction of attempted murder." (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 456 (*Rodriguez*).)

Prior to the enactment of Senate Bill No. 1437 (2017−2018 Reg. Sess.) (Senate Bill 1437) and Senate Bill No. 775 (2021−2022 Reg. Sess.) (Senate Bill 775), a defendant could be liable for attempted murder under the natural and probable consequences doctrine. This doctrine provides that "an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the 'natural and probable consequence' of the crime the accomplice aided and abetted (i.e., the nontarget offense)." (*People v. Gentile* (2020) 10 Cal.5th 830, 843, superseded on another ground by statute as stated in *People v. Wilson* (2023) 14 Cal.5th 839, 869.) "Under this doctrine, an aider and abettor who lacked a specific intent to kill could be found guilty of attempted murder solely due to their participation in a different target crime, if attempted murder was the natural and probable consequence of the target crime." (*Rodriguez*, *supra*, 103 Cal.App.5th at p. 456, citing *Gentile*, at p. 844.)

Effective January 1, 2019, Senate Bill 1437 "eliminated natural and probable consequences liability for murder as it applies to aiding and abetting, and limited the scope of the felony-murder rule." (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) In enacting Senate Bill 1437, the Legislature's declared intent was "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) To that end, Senate Bill 1437 added section 188, subdivision (a)(3) to the Penal Code: "Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." Senate Bill 1437 also limited felony-murder liability to cases where the defendant (1) "was the actual killer," (2) acted with an "intent to kill," or (3) acted as "a major participant" in the underlying felony and with "reckless indifference to human life" as those terms are defined in the felony-murder special circumstance statute. (§ 189,

8.

subd. (e); see also § 190.2, subd. (d) [felony-murder special circumstance statute].)[8]

Effective January 1, 2022, Senate Bill 775 expanded the class of defendants potentially entitled to relief under Senate Bill 1437's ameliorative changes to those convicted of attempted murder and manslaughter. (Stats. 2021, ch. 551, § 1, subd. (a); *People v. Delgadillo* (2022) 14 Cal.5th 216, 223, fn. 3 [identifying changes made by Senate Bill 775]; § 1172.6, subd. (a).) Senate Bill 775 also extended relief to defendants convicted of murder under any "other theory under which malice is imputed to a person based solely on that person's participation in a crime .…" (§ 1172.6, subd. (a), as amended by Stats. 2021, ch. 551, § 2.)

Senate Bill 1437 created a procedural mechanism for those convicted under the former law to petition the trial court for retroactive relief under the law as amended. (*People v. Strong* (2022) 13 Cal.5th 698, 708; Stats. 2018, ch. 1015, § 4.) Under section 1172.6, the process begins by the filing of a petition declaring the petitioner meets the requirements for relief (*id*., subd. (b)(1)(A)) including that the petitioner "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019," the effective date of Senate Bill 1437 (§ 1172.6, subd. (a)(3)). After the parties submit briefing, the trial court must hold a hearing "to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).) The court may dismiss the petition if the petition and record establish conclusively that the petitioner is ineligible for relief. (*Ibid*.) Otherwise, the court must issue an order to show cause and hold an evidentiary hearing. (*Ibid*.)

At the evidentiary hearing, the prosecution bears the burden of proving "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under

---

[8] Under the prior law, " ' "when the defendant or an accomplice kill[ed] someone during the commission, or attempted commission, of an inherently dangerous felony," the defendant could be found guilty of the crime of murder, without any showing of "an intent to kill, or even implied malice, but merely an intent to commit the underlying felony." ' " (*People v. Wilson*, *supra*, 14 Cal.5th at p. 868.)

California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) In addition to the evidence from the petitioner's prior trial, "[t]he prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (*Ibid*.) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid*.)

"In determining whether a trial court correctly denied a section 1172.6 petition following an evidentiary hearing, ' " 'we review the factual findings for substantial evidence and the application of those facts to the statute de novo.' " ' " (*People v. Arnold* (2023) 93 Cal.App.5th 376, 383.)

## B. Analysis

Here, the jury was not instructed on the natural and probable consequences doctrine, felony murder, or any other theory under which malice could be imputed to defendant. The court instructed the jury on the attempted murder charges using CALJIC No. 8.66 which informed the jury that "[m]urder is the unlawful killing of a human being with malice aforethought." The jury was instructed the prosecution must prove two elements to find defendant guilty of attempted murder: "1. A direct, but ineffectual act was done by one person towards killing another human being; and [¶] 2. The person committing such act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." (CALJIC No. 8.66.) The court further instructed the jury that "acts of a person who intends to kill another will constitute an attempt where those acts clearly indicate a certain, unambiguous intent to kill." No instructions on aiding and abetting were given since defendant was charged as the sole and direct perpetrator of the shooting, not an accomplice. We presume the jury followed its instructions in reaching a verdict. (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 821.) By finding defendant guilty of attempted murder for shooting John and Joe, the jury necessarily found defendant acted with express malice. A defendant is not

10.

entitled to relief under section 1172.6 where he or she was convicted of "attempted murder either as a perpetrator or a direct aider and abettor, and not under the natural and probable consequences doctrine, or indeed any theory under which malice is imputed to a person based solely on that person's participation in a crime." (*People v. Cortes* (2022) 75 Cal.App.5th 198, 204.) Accordingly, the trial court properly denied defendant's section 1172.6 petition because he was ineligible for relief as a matter of law. (*People v. Coley* (2022) 77 Cal.App.5th 539, 548 [§ 1172.6 petition properly denied where the jury was not instructed on attempted murder under the natural and probable consequences doctrine]; *People v. Daniel* (2020) 57 Cal.App.5th 666, 677 [the defendant was ineligible for relief under § 1172.6 where he was not convicted on felony murder or under a natural and probable consequences theory]; *People v. Offley* (2020) 48 Cal.App.5th 588, 599 [where the jury was not instructed on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis and the defendant's § 1172.6 petition may properly be denied].)

Defendant contends he could not be convicted of attempted murder without a finding he harbored malice and the trial court's conclusion whether he harbored malice was irrelevant was legal error. Defendant takes issue with the following portions of the court's ruling:

> "Proof of the existence of malice is not a required element for 'actual killers' under the exception in … Section 189[, subdivision] (e)(1). The Code clearly provides an 'or' between the three limitations on the application of the felony murder rule. [¶] … [¶]
>
> "Contrary to the argument of [defendant's attorney], nothing further needs to be proven before [defendant] can be declared ineligible for relief [under] … Section 1172.6. As the actual attempted killer, whether [defendant] harbored malice or not is irrelevant. As the sole and actual perpetrator of the attempted murder of the [v]ictims, [defendant] is ineligible for resentencing as a matter of law." (Italics omitted.)

The Attorney General concedes the trial court "embarked on a questionable analysis" in finding it irrelevant whether defendant harbored malice and referencing

11.

inapplicable felony-murder principles. He argues the court's ruling should stand however because its decision denying defendant's section 1172.6 petition was proper. We agree.

Importantly, the trial court discussed the relevance of defendant's malice in the context of the felony-murder rule. Senate Bills 1437 and 775 effectively made malice always relevant in a murder conviction *except* under the felony-murder rule. (*People v. Vang* (2022) 82 Cal.App.5th 64, 87 (*Vang*) ["under Senate Bill 1437, the only exception to the malice requirement imposed by section 188 is the felony-murder rule"]; § 188, subd. (a)(3) [except for the felony-murder rule, "a principal in a crime shall act with malice aforethought" to be convicted of murder].) Despite limitations to the felony-murder rule enacted by Senate Bill 1437, "malice is still not a required element for actual killers .…" (*People v. Fisher* (2023) 95 Cal.App.5th 1022, 1029; *Vang*, at p. 88 [under the felony-murder rule, "[g]enerally, the 'actual killer' need not have acted with any intent to kill"]; § 190.2, subd. (b).) Though the court's broad assertion whether defendant harbored malice was irrelevant was imprecise, the court correctly stated proof of malice is not a required element for actual killers under the felony-murder rule (§ 189, subd. (e)(1)).

We nonetheless question the necessity and relevance of any felony-murder analysis under the facts of this case. Inquiry into whether a defendant is liable for murder as the "actual killer" under the felony-murder law is warranted when "a death occurs" in the commission of an enumerated felony. (§ 189, subd. (e).) Defendant is not an "actual killer" under section 189 because his victims survived the shooting. (*Vang*, *supra*, 82 Cal.App.5th at p. 91 [the term "actual killer" in § 189, subd. (e)(1) "means the person (or persons) who personally killed the victim"].) Moreover, it is unnecessary to address if defendant qualified for the categories in section 189, subdivision (e) permitting liability for a murder "in the perpetration or attempted perpetration of [an enumerated felony]" because no instructions on felony murder or aiding and abetting were given to the jury and defendant was not charged with an enumerated felony. (§ 189, subd. (a), (e).) This includes analysis of whether defendant was a major participant who acted with reckless

12.

indifference to human life pursuant to *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. Defendant was charged and convicted of *attempted* murder. Defendant could not have been convicted of attempted felony murder as "California has no crime of attempted felony murder." (*People v. Billa* (2003) 31 Cal.4th 1064, 1071, fn. 4; *People v. Brito* (1991) 232 Cal.App.3d 316, 321 ["California courts have consistently held that there [is] no crime[] of attempted felony murder"].) If any of the victims had died from the shooting, the jury could not have been instructed on felony murder based on the only other charge pled in the information: felony assault with a firearm. (*People v. Ireland* (1969) 70 Cal.2d 522, 539 [the jury cannot be instructed on second degree felony murder using assault with a deadly weapon as the underlying felony].)

Although defendant is not an actual killer, the trial court correctly concluded the fact that he was the actual *shooter* makes him ineligible for relief as a matter of law. His role as the actual perpetrator definitively proves his attempted murder convictions were not based on a theory of imputed malice rendered invalid by changes to sections 188 and 189. (*People v. Muhammad* (2024) 107 Cal.App.5th 268, 279−280 [the defendant was ineligible for relief where the record of conviction conclusively established he was convicted as the actual perpetrator of the attempted murder]; *People v. Hurtado* (2023) 89 Cal.App.5th 887, 893 [the court's failure to follow § 1172.6 procedure was harmless error because the defendant alone was the attempted murderer rendering him ineligible for relief].) The argument began with Soto, but defendant repeatedly shot the gun at the victims while yelling, "I'm going to kill you." Even without considering defendant's stated intent while shooting,[9] purposefully firing a gun at another at close range gives rise to an inference of an intent to kill. (*People v. Smith* (2005) 37 Cal.4th 733, 742; *People v. Canizales* (2019) 7 Cal.5th 591, 602 [intent to kill for attempted murder may be inferred

---

[9] Defendant's testimony at the section 1172.6 evidentiary hearing was equivocal on whether he said, "I'll kill you," though John testified at trial he heard defendant make this statement a few times during the shooting.

from the defendant's statements and actions].) The jury also found true the enhancements on the attempted murder charges for John and Joe that defendant personally used a firearm and personally inflicted great bodily injury. This means the jury found defendant was the actual shooter who caused injury to the victims. (*People v. Harden* (2022) 81 Cal.App.5th 45, 55 ["The natural meaning of 'personally inflicted' is that the defendant [himself] inflicted the injury"]; *Muhammad*, at p. 280 [the defendant's admission to personally using attempted murder weapon supported finding he was the sole, direct perpetrator].) Indeed, at the evidentiary hearing, defendant confirmed in his testimony he intended to pull the gun's trigger, and he did so three or four times.

Even if parts of the trial court's reasoning were flawed or superfluous, we may affirm its ruling if correct in law on any ground. (*People v. Turner* (2020) 10 Cal.5th 786, 807.) Because defendant was ineligible for relief under section 1172.6 as a matter of law, any error by the court in discussing the relevance of defendant's malice was harmless. (*Rodriguez*, *supra*, 103 Cal.App.5th at p. 459 [harmless error if the trial court erred in describing the law where no reasonable probability of a different result on § 1172.6 petition].)[10]

To the extent defendant is challenging the denial of his section 1172.6 petition for his attempted voluntary manslaughter conviction, this claim is likewise rejected.[11] The jury convicted defendant of the lesser offense of attempted voluntary manslaughter for Ruben based upon a sudden quarrel or heat of passion. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137 [attempted murder is reduced to attempted voluntary manslaughter where the defendant acted upon a sudden quarrel or heat of passion];

---

[10]  Defendant cites *People v. Watson* (1956) 46 Cal.2d 818, 836 and makes no argument the trial court's error is one of federal law subject to the standard in *Chapman v. California* (1967) 386 U.S. 18.

[11]  Defendant does not expressly challenge the denial of his section 1172.6 petition on the attempted voluntary manslaughter conviction. His opening brief states his petition was based on his two attempted murder convictions and his arguments are directed at those convictions.

*People v. Moye* (2009) 47 Cal.4th 537, 549 [a killing in the heat of passion negates the element of malice and reduces murder to voluntary manslaughter].) The trial court concluded defendant's attempted voluntary manslaughter conviction was not eligible for relief because this offense is not identified in section 1172.6, and the court would deny relief based on the analysis in its ruling even if the statute was amended to include this offense. In *People v. Luu* (2025) 110 Cal.App.5th 1051, review granted July 16, 2025, S291235, the Fourth District Court of Appeal, Division Three held that "a petitioner is eligible for relief under section 1172.6 when that person *was charged with attempted murder under the natural and probable consequences doctrine* and he or she was convicted of the lesser included offense of attempted manslaughter." (*Luu*, at p. 1055, italics added.) Assuming without deciding attempted voluntary manslaughter is among the offenses eligible for relief under section 1172.6, defendant would still not be entitled to relief because the jury was not instructed on the natural and probable consequences doctrine. The outcome here would be the same even if our Supreme Court ultimately concludes in *Luu* that section 1172.6 applies to attempted voluntary manslaughter.

## II.    Evidence of Self-Defense

As the trial court observed, the defense theory at the 1995 trial was that defendant was not the actual shooter. Trial counsel devoted significant effort to undermining the victims' and witnesses' identification of defendant as the shooter. As was his Fifth Amendment right, defendant did not testify at his trial, nor did he present evidence he acted in self-defense. At the section 1172.6 evidentiary hearing, defendant testified he acted in self-defense when he shot at the victims. He claimed he was beaten and stabbed by the group outside the bar and feared for his life when he pointed the gun at the victims. This evidence presented a new defense theory that defendant was not guilty of attempted murder because he acted in self-defense.

A homicide is justifiable when a person kills or attempts to kill with an actual and reasonable belief in the need to defend from imminent danger of death or great bodily injury. (*People v. Stitely* (2005) 35 Cal.4th 514, 551; *People v. Schuller* (2023) 15 Cal.5th

15.

237, 243 [imperfect self-defense reduces the killing from murder to voluntary manslaughter when a person kills with an actual but unreasonable belief he or she is in imminent danger of death or great bodily injury]; *People v. Horn* (2021) 63 Cal.App.5th 672, 682 [self-defense principles apply in the context of attempted murder and attempted voluntary manslaughter]; *People v. Van Ronk* (1985) 171 Cal.App.3d 818, 824−825 [same].)[12] Whether section 1172.6, subdivision (d)(3) allows defendant to present evidence supporting a new defense theory is a question of law we review de novo pursuant to well-established principles of statutory interpretation. (*Lewis*, *supra*, 11 Cal.5th at p. 961.) " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' " (*People v. Harrison* (2013) 57 Cal.4th 1211, 1221.)

Defendant contends section 1172.6, subdivision (d)(3) gives both sides the opportunity to present new evidence at the evidentiary hearing and his testimony about what made him believe he was in imminent danger of death or great bodily injury was "new" evidence within the meaning of the statute. Though the term "new or additional evidence" is not defined in section 1172.6, "the ordinary meaning of the word 'new,' unbounded by further definition or restriction in the statutory text, suggests the Legislature intended to allow both the prosecution and defendant to rely on evidence that becomes available after a trial or plea, whether the evidence previously existed or not." (*People v. Myles* (2021) 69 Cal.App.5th 688, 698.) The *Myles* court found the testimony of a defendant who exercised his Fifth Amendment right not to testify at trial but does so at a section 1172.6 evidentiary hearing "constitutes evidence about facts and circumstances existing at the time of the crime that could have been admitted at trial" and was "new" evidence under section 1172.6. (*Id*. at pp. 700–701.) Under the definition in

---

[12]     Defendant suggests he may have acted in self-defense or defense of Soto. The same legal principles apply when a person kills in self-defense or defense of another. (*People v. Randle* (2005) 35 Cal.4th 987, 997, overruled on another ground in *People v. Chun* (2009) 45 Cal.4th 1172, 1201.)

16.

*Myles*, we agree with defendant his testimony about the shooting is "new" evidence under section 1172.6, subdivision (d)(3).

We part ways with defendant however in his understanding of the scope of a section 1172.6 evidentiary hearing and how the trial court may consider new evidence that seeks to challenge the jury's findings on his guilt, rather than show defendant could not now be convicted under the amended law. A section 1172.6 hearing is not, as defendant asserts, an "independent inquiry" into whether the petitioner cannot presently be convicted of murder or attempted murder because of changes to sections 188 and 189 made by Senate Bill 1437. A "section 1172.6 proceeding is a continuation of the underlying criminal proceeding. The two proceedings are inextricably intertwined.… When a trial judge issues an order to show cause, the proceedings remain intertwined because the scope of the hearing *is limited to the issues made relevant by the changes to the law* effected by Senate Bill … 1437 .…" (*Gomez v. Superior Court* (2024) 100 Cal.App.5th 778, 787, italics added.) While both parties may produce new evidence "to meet their respective burdens" (§ 1172.6, subd. (d)(3)), the purpose of section 1172.6 " 'is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.' " (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947.) The sole question at a section 1172.6 evidentiary hearing "is whether the petitioner committed murder under a still-valid theory .…" (*People v. Clements* (2022) 75 Cal.App.5th 276, 294). It is " 'not a trial *de novo* on all the original charges.' [Citation.] Rather, it is a *postconviction* … ' "act of lenity" [citation], allowing for the retroactive application of the new law governing accomplice liability .…' " (*People v. Williams* (2020) 57 Cal.App.5th 652, 661.) Consequently, a petitioner "cannot use a section 1172.6 resentencing hearing to relitigate facts already determined, whether by plea, admission, or verdict." (*Rodriguez*, *supra*, 103 Cal.App.5th at p. 458.) And while the trial court acts as an independent fact finder in deciding whether a defendant is entitled to relief under section 1172.6, its "factual determinations are limited to 'issues made relevant by the changes to the law

effected by [the amendments].' " (*Rodriguez*, at p. 457; see also *Gomez*, at p. 788 [the court's factual determinations after an order to show cause will often be resolved in light of what occurred in the underlying proceeding as interpreted in light of the amended law of murder].) "[T]he trial judge isn't charged with holding a whole new trial on all the elements of murder. Instead, the parties will focus on evidence made relevant by the amendments to the substantive definition of murder." (*Clements*, at p. 298).

*People v. Mares* (2024) 99 Cal.App.5th 1158, though addressing denial of a section 1172.6 petition at the prima facie phase, is instructive. In *Mares*, the defendant was charged with murder and pled guilty to voluntary manslaughter. The evidence presented at the preliminary hearing showed the defendant alone fought with and stabbed the victim. (*Id*. at p. 1162.) The trial court denied the defendant's section 1172.6 petition upon finding he was the actual killer and had failed to make a prima facie showing for relief. (*Mares*, at p. 1163.) The Court of Appeal concluded the petition was properly denied because the prosecution was pursuing a murder conviction based only on a theory the defendant was the actual killer and "[n]othing in the record suggests [he] could have benefitted from Senate Bill 1437's changes in the law." (*Id*. at p. 1166.) For the defendant to show entitlement to relief under section 1172.6, "he must assert he would have defended himself by offering facts to support a murder theory that is now abrogated .…" (*Mares*, at p. 1166.) The court opined in relevant part: "It is important to understand it is not relevant if [the defendant] wished to claim (for instance) that he was misidentified and another person committed the crime. That was a defense that was available to him at the time of his plea. Senate Bill 1437 has no bearing on it. New evidence of misidentification could support a petition for a writ of habeas corpus, but it would not show that he cannot be convicted 'because of' the changes to the law, as required by section 1172.6." (*Mares*, at p. 1168.) The court further stated if the defendant had gone to trial, he could have acknowledged he was the killer "but argued self-defense or some other justification" but observed that option was "available to him at the time of his plea, without any change in the law." (*Ibid*.) An argument the defendant

18.

could not be convicted based on self-defense "would not show he cannot be convicted 'because of the changes to Section 188 or 189' (§ 1172.6, subd. (a)(3)) .…'" (*Mares*, at p. 1168.)

Likewise, here, defendant's new evidence of self-defense does not show he could not now be convicted of attempted murder because of Senate Bill 1437's changes to the law. Senate Bill 1437 did not alter the law on self-defense, a well-established doctrine long predating defendant's crimes and trial. (*People v. Herbert* (1882) 61 Cal. 544, 547; § 197 [justifiable homicide statute enacted in 1872].) This defense was available to defendant at the time of trial. Defendant provides no argument, and we discern none, that if he acted in self-defense in shooting the victims he could not be convicted of "attempted murder *because of* changes to Section 188 or 189 made effective January 1, 2019," (§ 1172.6, subd. (a)(3), italics added).

Defendant claims considering "new" evidence at a section 1172.6 hearing is not a do-over of a previous trial. He argues the authorities cited in the trial court's ruling do not support the proposition that decisions by a previous trial attorney "nullify" a section 1172.6 petitioner's ability to present new or additional evidence at an evidentiary hearing. Defendant contends a trier of fact could have found credible his evidence he was injured in the melee over the gun and perceived himself and/or Soto in imminent danger of death or great bodily harm.

Defendant does not expressly identify the question as one of issue preclusion, but the thrust of his argument is that the trial court could revisit the jury's findings based on his new self-defense evidence. Issue preclusion bars relitigation of previously decided issues if: (1) the issue sought to be precluded from relitigation is identical to that decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; and 5) the party against whom preclusion is sought is the same as, or in privity with, the party to the former proceeding. (*People v. Strong*, *supra*, 13 Cal.5th at p. 716.) Our Supreme Court has concluded section 1172.6

19.

does not categorically prohibit consideration of factual findings made by a jury in the defendant's underlying trial. (*People v. Curiel* (2023) 15 Cal.5th 433, 451, citing *Strong*, at p. 714.) But the court recognized "the structure of the statute … strongly suggests the Legislature contemplated that many, and perhaps most, such findings would be given effect on resentencing. Had the Legislature intended to permit wholesale relitigation of findings supporting murder convictions in the context of section 1172.6 resentencing, we expect it would have said so more plainly." (*Strong*, at p. 715.) Against this backdrop, the *Curiel* court concluded the doctrine of issue preclusion, where applicable, has a preclusive effect in section 1172.6 proceedings. (*Curiel*, at p. 450.) Specifically, the court opined that "if the jury has made a factual finding, and it is issue preclusive under the [applicable] principles …, a court must give effect to that finding." (*Id*. at p. 465.) Because the defendant in *Curiel* pled not guilty to the gang-murder special circumstance, which included an intent to kill element, his intent to kill was "actually litigated and necessarily decided" by the jury. (*Id*. at p. 452.) In reaching this conclusion, the court observed "it is difficult to foresee a situation in which a relevant jury finding, embodied in a final criminal judgment, would not meet the traditional elements of issue preclusion." (*Id*. at pp. 453−454.) The court concluded section 1172.6 does not permit " 'litigat[ing] anew' any trial issues or allowing 'a petitioner to challenge any aspect of the factfinding from the original trial that he or she wishes to revisit.' " (*Curiel*, at p. 470.)

By pleading not guilty, defendant put in issue all the elements of attempted murder. (*People v. Curiel*, *supra*, 15 Cal.5th at p. 452; *People v. Steele* (2002) 27 Cal.4th 1230, 1243.) The prosecution bears the burden of proving the absence of justification for attempted murder only where the defendant raises a reasonable doubt as to whether he acted in self-defense. (*People v. Lloyd* (2015) 236 Cal.App.4th 49, 63; *People v. Frye* (1992) 7 Cal.App.4th 1148, 1159 [the absence of justification is "an element of an offense only if such a defense is raised in some manner"].) Defendant's trial counsel chose to challenge defendant's culpability by trying to show he was misidentified as the shooter. Counsel's decision not to present evidence defendant acted in self-defense does not

preclude the issue of defendant's guilt from being submitted to and determined by the trier of fact. (*Curiel*, at pp. 452−453 [issue preclusion applies even where a party failed to make an argument or present evidence on an issue because the doctrine requires only the opportunity to litigate, not whether the litigant availed themselves of the opportunity].) Defendant's recent testimony he acted in self-defense was an improper attempt to have the trial court revisit the jury's findings on his guilt. The court could not do so in deciding whether defendant was entitled to resentencing pursuant to section 1172.6. The statute does not authorize a petitioner to "present new evidence to undermine a jury's finding of guilt under a particular theory of murder, effectively retrying the case." (*People v. Daniel*, *supra*, 57 Cal.App.5th at p. 678.)

We find no error in the trial court's conclusion the only issue to be addressed in defendant's section 1172.6 proceeding was whether his convictions remained valid despite the ameliorative provisions of Senate Bill 1437. Because defendant was ineligible for relief as a matter of law, his petition was properly denied.

As the Attorney General argues, this case should never have even made it to an evidentiary hearing. The trial court should have denied defendant's petition at the prima facie stage because defendant was ineligible for relief as a matter of law. Defendant therefore should not have been given an opportunity to present his self-defense evidence at all. However, at the prima facie stage, the court was required to accept defendant's factual allegations in his petition as true, make a preliminary assessment on entitlement to relief, and issue an order to show cause if defendant would be entitled to relief if the petition's factual allegations were proved. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The court acknowledged in its ruling that a court may initially determine there is a prima facie case for relief, proceed to an evidentiary hearing, and then determine its initial determination was incorrect and rule the petitioner is ineligible for relief as a matter of law. We agree. Nothing prevented the court from denying defendant's petition after an evidentiary hearing. (See, e.g., *People v. Medrano* (2021) 68 Cal.App.5th 177, 181−182 [court denied § 1172.6 petition after issuing an order to show cause and holding an evidentiary

21.

hearing].)

## **DISPOSITION**

The order denying defendant's petition for resentencing is affirmed.


GUERRA, J.[†]

WE CONCUR:


HILL, P. J.


SNAUFFER, J.

---

[†]     Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.